## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

HAROLD KANNIARD,                          :

                    Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.        :

Case No. 3:10-cv-370

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

2

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSI and SSD on June 23, 2004, alleging disability from October 20, 2003, due to right side back pain and diabetes. (Tr. 13, 54, 66). The Commissioner denied Plaintiff's applications initially and on reconsideration. (Tr. 44-48; 50-52). Administrative Law Judge Melvin Padilla held a hearing, (Tr. 613-52), and subsequently determined that Plaintiff is not disabled. (Tr. 10-32). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe residuals of abdominal surgeries for ulcerative colitis, residuals of colostomy, degenerative disc disease of the lumbar spine, depression, anxiety disorder, and pain disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 18, ¶ 3; 24, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 25, ¶ 5). Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 30, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 31, ¶ 11; Tr. 32).

Plaintiff has a history of ulcerative colitis and has undergone total abdominal colectomy with ileostomy. See Tr. 130. During 2001 and 2003, Plaintiff underwent several surgical hernia repairs and treatment for small bowel obstructions. (Tr. 17-114; 115; 118; 122-23; 129-31).

Plaintiff participated in physical therapy during the period April 14, 2004, through

4

July 8, 2004, for his complaints of abdominal and flank pain. (Tr. 132-42). Plaintiff's physical therapy notes reveal that he walked with a cane, had decreased flexibility and strength, shifted his upper body to the left when he sat, and had positive straight leg raising on the right to forty degrees. *Id.* At the completion of therapy, it was noted that Plaintiff reported no improvement in his pain and that he still needed a cane for walking. *Id.*

      The record contains a copy of Plaintiff's treatment notes dated December 20, 1999, to August 26, 2004, from the Versailles Medical Center where Plaintiff received treatment primarily from Dr. Lenox. (Tr. 143-62). Those records reveal that Dr. Lenox treated Plaintiff for various conditions including diabetes, hypertension, obesity, headaches, abdominal pain, possible adhesions, abdominal wall hernias, sacroiliitis, paraspinal muscle strain, erectile dysfunction, epididymitis, lumbosacral strain and pain, and memory difficulties. *Id.*

      Examining psychologist Dr. Boerger reported on January 10, 2005, that Plaintiff graduated from high school, took a year of computer classes at Edison Community College, last worked in October, 2003, was told he was laid off because of "restructuring" but that he was missing quite a bit of work due to illness, and that he walked with a cane and leaned on the cane when he sat in a chair. (Tr. 169-74). Dr. Boerger also reported that Plaintiff's affect was appropriate, he did not display any unusual suspiciousness nor any delusions or hallucinations, was alert and oriented, reportedly had trouble remembering things, and seemed to be of average range of intellectual abilities. *Id.* Dr. Boerger identified Plaintiff's diagnosis as depressive disorder NOS and he assigned him a GAF of 55. *Id.* Dr. Boerger opined that Plaintiff's abilities to relate to others and to understand and follow instructions were mildly impaired, his ability to maintain attention to perform simple repetitive tasks was unimpaired, and his ability to withstand the stress and pressures

associated with day-to-day work activity was mildly to moderately impaired. *Id.*

During the period May 7, 2002, to March 1, 2005, Plaintiff sought emergency room treatment for various complaints: on May 7, 2002, Plaintiff received treatment for right sided abdominal pain (Tr. 215-19); on March 18, 2004, he received treatment for lower back pain at which time he had diffuse paraspinal tenderness (Tr. 209-12); on February 22, 2005, he sought treatment for dizziness, falling, and abdominal pain (Tr. 206-07); and on March 1, 2005, he sought treatment for headache, anxiety, and diabetes. (Tr. 203-04).

Plaintiff was hospitalized April 16-19, 2005, for treatment of depression, anger problems, and getting involved in self-harming behavior. (Tr. 220-34). At the time Plaintiff was admitted to the hospital, it was noted that he walked with a cane, was cooperative, had a dysphoric mood and affect, normal speech, organized thought processes, was alert and oriented, his attention was good, his impulse control was fair to poor, and that his insight was limited. *Id.* Plaintiff was treated with medications, individual and group therapies, and was discharged in improved condition with the diagnosis of major depression single episode severe without psychosis and a GAF of 70. *Id.*

The record contains a copy of treating surgeon Dr. Taylor's office notes dated March 25, 2003, to July 22, 2005. (Tr. 270-90). On July 22, 2005, Dr. Taylor reviewed Plaintiff's history and noted that Plaintiff had a history of ulcerative colitis and underwent a total abdominal colectomy in 1992, had undergone multiple procedures involving replacement of the ileostomy and multiple surgeries for fistulas and hernias, and that in 2001, he had his ileostomy relocated. *Id.* Dr. Taylor also noted that Plaintiff had undergone at least two procedures in an attempt to repair an incisional hernia, the last one in about 2004, and that since that time he has complained of right lower quadrant

pain at the hernia site, it was difficult for him to walk, and that he used a cane. *Id.* Dr. Taylor also reported that Plaintiff had lumbar spine tenderness, mild extremity tenderness, right lower quadrant tenderness, some voluntary guarding, and some decreased sensation over the left lower quadrant in a stocking glove distribution of his hands and feet. *Id.* Dr. Taylor identified Plaintiff's current diagnoses as right lower quadrant pain and peristomal hernia, left lower quadrant. *Id.*

The records contain a copy of the treatment notes from Plaintiff's podiatrist dated February 23, 2004, to August 22, 2005. (Tr. 291-304). Those records reveal that Plaintiff received treatment from his podiatrist for painful right heel, mildly painful left heal, leg-length discrepancy, and left tarsal tunnel syndrome. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Upper Valley Medical Center outpatient facility dated February, 2001, to September 2, 2005. (Tr. 305-54). Those records reveal that Plaintiff underwent various medical tests at that facility with the following results: an August 27, 2003, abdominal CT scan indicated hernias and a lumbar spine CT scan indicated diffuse bulging disc at L5-S1; an October 13, 2004, abdominal CT scan indicated no acute abnormality; October 29, 2004, x-rays of Plaintiff right hip and lumbar spine were normal; a November 29, 2004, MRI of Plaintiff's right hip was normal; a March 2, 2005, brain MRI indicated Ethmoid air-cell disease; a July 6, 2005, abdominal CT scan indicated a hernia at the ileostomy site; a September 2, 2005, lumbar spine MRI indicated a rightward paracentral disc protrusion at the level of L4-L5 with effacement of the thecal sac and diffuse bulging disc at the level of L5-S1 without effacement of the thecal sac. *Id.*

The record contains the treatment notes of Drs. Ahmed and Miller dated October 8,

2004, through November 3, 2006.[1] (Tr. 355-92; 509-44; 546-58). Dr. Ahmed reported on June 23, 2005, that Plaintiff's diagnoses included non-insulin dependent diabetes mellitus, anxiety, depression, chronic right-sided abdominal pain, leg pain, low back pain, ulcerative colitis status post multiple surgeries, fistula, and hypertension. *Id.* Dr. Ahmed also reported that Plaintiff's condition was poor but stable, that in an eight-hour workday he was able to stand/walk and sit each for one to one and one-half hours and for one-half hour without interruption, was not able to lift/carry any weight, and that he was unemployable. *Id.* On December 4, 2005, Dr. Ahmed reported that he first saw Plaintiff on October 8, 2004, last saw him on October 6, 2005, his diagnoses were diabetes mellitus, chronic low back pain, abdominal pain, hypertension, ulcerative colitis, depression/panic disorder, chronic bilateral leg pain, headaches, and dizziness. *Id.* Dr. Ahmed also reported that Plaintiff was not able to engage in any gainful employment because of his multiple chronic medical conditions and his psychiatric conditions and that he had marked restrictions in his activities of daily living. *Id.* In November, 2006, Plaintiff underwent a functional capacity evaluation which revealed decreased strength, poor abdominal musculature, atrophy of the left thigh, decreased sensation in the right leg and foot, positive Faber and Fadir tests on the right, positive straight leg raising, an antalgic gait, and a complaint of dizziness. *Id.* The evaluator recommended that Plaintiff not participate in a work conditioning or work hardening program and that he have an occupational therapy evaluation at home. *Id.*

The record contains the treatment notes of physical medicine and rehabilitation physician Dr. Duritsch dated October 20, 2004, through February 1, 2006. (Tr. 393-405). Those notes reveal that Dr. Duritsch treated Plaintiff for right hip and groin pain likely secondary to

---

[1] Dr. Miller assumed responsibility for Plaintiff's care from Dr. Ahmed on September 8, 2006.

trochanteric bursitis, rule out avascular necrosis as an underlying condition, right lower quadrant pain, right trochanteric bursitis with improvement, buttock, hip, and radiating leg pain into the thigh with tingling distally into the foot, back pain and leg pain secondary to L4-L5 disc protrusion. *Id.* Over time, Dr. Duritsch noted that Plaintiff exhibited tenderness over the right trochanteric bursa, normal neurological findings, and positive straight leg raising. *Id.* A September 13, 2005, EMG of Plaintiff's right leg was normal. *Id.*

The record contains Plaintiff's mental health treatment notes from psychiatrist Dr. Pan dated April 25, 2005, to November 2, 2006. (Tr. 409-428; 439-41; 570). Those notes reveal that Dr. Pan treated Plaintiff for depression and panic disorder. *Id.* On October 31, 2005, Dr. Pan reported that Plaintiff had been hospitalized from April 16-19, 2005, because he had been having severe anger, mood swings, agitation, was out of control and was banging his head against the wall. *Id.* Dr. Pan also reported that Plaintiff had severe chronic pain because of ulcerative colitis, since his discharge had been receiving treatment as an outpatient, continued to have many symptoms of depression, had difficulty staying on task and functioning, and that he continued to experience moderate symptoms of anxiety and depression. *Id.* Dr. Pan opined that Plaintiff was not able to function in a competitive work environment due to depression, anxiety, and chronic pain, was not able to perform most work-related mental activities, had a slight restriction of activities of daily living, a moderate impairment in maintaining social functioning, and marked deficiencies of concentration. *Id.*

Treating psychologist Dr. Smith's office notes dated July 14, 2005, to December 14, 2006, are included in the record. (Tr. 429-38; 559-69). On October 31, 2006, Dr. Smith reported that Plaintiff's diagnoses were major depressive disorder, single episode, severe, anxiety disorder

9

NOS, and pain disorder associated with psychological factors and ulcerative colitis, that he was not able to perform most work-related mental functions, and that he was not able to sustain a routine with or without supervision. *Id.*

The record contains treating neurologist and pain specialist Dr. Demirjian's office notes dated April 6 through August 17, 2006. (Tr. 442-508). Those records reveal that Plaintiff consulted with Dr. Demirjian for lumbar, right groin, and right thigh pain. *Id.* At the time Dr. Demirjian first examined Plaintiff, he reported that he had slightly depressed reflexes, reduced ranges of motion, and tenderness. *Id.* Dr. Demirjian subsequently performed a series of epidural injections and Plaintiff reported some improvement after the injections. *Id.* Plaintiff later underwent trochanteric bursa injections which Plaintiff reported did not provide pain relief. *Id.*

Plaintiff consulted with neurosurgeon Dr. Taha on December 21, 2006 who reported that Plaintiff's range of spinal motion was limited due to pain and that his prior lumbar MIR showed disc herniation paracentral L4-5 on the right and a central bulge L5-S1. (Tr. 572-74). Dr. Taha acknowledged the failure of medical treatment and he recommended surgery as an acceptable option. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff did not satisfy any Listings, the issue of Plaintiff's depression was outside his area of expertise, there were numerous examinations that failed to reveal evidence of focal neurologic deficits in the lower extremity, and that he was able to perform a limited span of light work. (Tr. 638-47). The MA testified further that Plaintiff was able to lift up to twenty pounds occasionally and ten pounds frequently, stand/walk for four hours a day, sit for six hours a day, and that he should have a sit/stand option every 30 minutes. *Id.* The MA also testified that Plaintiff's hernias should not significantly interfere with his ability

to sit and that adhesions can cause pain. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by rejecting the opinions of his treating physicians, by rejecting the opinions of his treating mental health care provider, and by finding that he (Plaintiff) is not credible. (Doc. 8).

In support of his first Error, Plaintiff argues that the Commissioner erred by rejecting Dr. Ahmed's opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security

11

Ruling[2] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

>agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Ahmed's opinion, Judge Padilla determined that it was not supported by clinical findings and diagnostic techniques and because it was inconsistent with other evidence of record. (Tr. 27-28).

As noted above, Dr. Ahmed essentially opined in June, 2005, about eight months after he started to treat Plaintiff, that Plaintiff's residual functional capacity is very restricted and that Plaintiff is disabled. In December, 2005, Dr. Ahmed repeated his opinion that Plaintiff is disabled. However, Dr. Ahmed failed to provide any objective findings to support those opinions. In addition, in December, 2005, Dr. Ahmed opined that Plaintiff is disabled due to his medical and psychiatric conditions. Of course, Plaintiff's psychiatric conditions are outside Dr. Ahmed's area of expertise. Additionally, a review of Dr. Ahmed's office notes reveals that he reported few objective findings which support his opinion. For example, over time, Dr. Ahmed reported, at most, that Plaintiff had tenderness over the right side of his abdomen, mild tenderness in the LS area, moderate muscle tightness. Indeed, Dr. Ahmed's office notes essentially recite Plaintiff's subjective

complaints.

The objective test results of record do not provide support for Dr. Ahmed's opinion. As noted above, the objective tests performed at the Upper Valley Medical Center over the period February 2001 to September 2, 2005, revealed at most, a disc protrusion at L4-5 and a hernia at Plaintiff's ileostomy site. The other test results, including a 2004 EEG, (Tr. 322), and a 2005 EMG, (Tr. 399), were essentially negative.

Finally, Dr. Ahmed's opinion is inconsistent with the other medical evidence. Treating surgeon Dr. Taylor's records reveal that Dr. Taylor reported, at worst, mild objective findings. Similarly, Dr. Duritsch reported that Plaintiff had only "tenderness" and positive straight leg raising and Dr. Demirjian noted that his examination of Plaintiff revealed findings that were slight. Dr. Ahmed's opinion is also inconsistent with the MA's opinion and the reviewing physicians' opinions. (Tr. 163-68; 175-83).

Under these circumstances, the Commissioner had an adequate basis for rejecting Dr. Ahmed's opinion that Plaintiff is disabled.

In support of his second Error, Plaintiff argues that the Commissioner erred by rejecting the opinion of Drs. Pan and Smith, his mental health care providers.

Both Dr. Pan and Dr. Smith essentially opined that Plaintiff is disabled by his alleged mental impairment. Judge Padilla rejected those opinions on the basis that they are not supported by clinical findings and are inconsistent with other evidence. (Tr. 28-29).

A review of Dr. Pan's clinical notes reveals that while he opined that Plaintiff is disabled, his clinical notes are not consistent with that opinion. For example, over time, Dr. Pan assigned Plaintiff a GAF score of between sixty-five and seventy, indicating, at worst, mild

14

impairment. In addition, Dr. Pan's notes are essentially a recitation of Plaintiff's subjective complaints and contain few, if any, clinical findings. Likewise, Dr. Smith's notes reflect primarily Plaintiff's subjective complaints and few clinical findings.

Drs. Pan's and Smith's opinions are inconsistent the other evidence of record. Dr. Boerger found that Plaintiff's affect was appropriate, he did not display any unusual behaviors, was alert and oriented, and that his abilities to perform work-related mental activities were, at most, mildly to moderately impaired. Drs. Pan's and Smith's opinions are also inconsistent with the reviewing psychologists' opinions. (Tr. 184-202).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Pan's and Dr. Smith's opinions.

In support of his third Error, Plaintiff argues that the Commissioner erred by failing to find that he was entirely credible.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

For the same reasons that the Commissioner had an adequate basis for rejecting Drs. Ahmed's, Pan's, and Smith's opinions, he had an adequate basis for finding that Plaintiff was not

15

entirely credible. Specifically, Plaintiff's allegations of total disability are not supported by the clinical evidence of record, are inconsistent with the objective test results, and are inconsistent with the findings and opinions of Drs. Taylor, Duritsch and Demirjian as well as with the MA's and reviewing experts' opinions.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 24, 2011.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If

the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).